# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| VITA MONESTERSKY, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>THE UNIONTOWN HOSPITAL, )<br>and UNITED STATES )<br>OF AMERICA, )<br>)<br>Defendants. ) | Civil Action No. 08-383<br>Judge Nora Barry Fischer |

### MEMORANDUM ORDER

### Re: Defendant The Uniontown Hospital's Motions in Limine regarding evidence of increased risk of harm (Docket No. 66)

This matter is before the Court on Defendant The Uniontown Hospital's ("Defendant Hospital") Motion in Limine to Preclude Plaintiff from Introducing any Evidence concerning increased risk of harm. (Docket No. 66). Upon consideration of the Motion and supporting Brief (Docket Nos. 66 and 67), as well as Plaintiff's Response (Docket Nos. 95),[1] oral argument held on October 26, 2009, and for the following reasons, Defendant Hospital's Motion in Limine concerning evidence of increased risk of harm [66] is DENIED.

Defendant Hospital argues for the exclusion of Dr. Leggat's testimony concerning Plaintiff's increased risk of developing future harms on the basis that Pennsylvania law requires that in order to present such evidence, Plaintiff must have actually experienced the harm. (Docket No. 67 at 2 (citing *Vogelsberger v. Magee-Women's Hospital of UPMC*

---

[1] Defendant the United States of America does not object to Defendant Hospital's Motion in Limine addressed herein. (*See* Docket No. 101 at 2).

1

*Health System*, 903 A.2d 540, 563-564 (Pa. Super. Ct. 2006)).[2] Defendant Hospital contends there is no dispute that Dr. Leggat testified that Plaintiff has an increased risk of potentially developing future ailments, but there is no evidence that Plaintiff currently suffers from any such condition. (Docket No. 67 at 2). Accordingly, it maintains that Plaintiff should not be permitted to offer any evidence regarding an increased risk of future harm. (Docket No. 67 at 2).

Plaintiff argues in response that Defendant Hospital misapplies Pennsylvania law in this context. (Docket No. 95 at 1). The testimony in dispute, Plaintiff contends, is prognosis testimony, i.e. the harm that may result from Plaintiff's now existing injuries. (*Id.*). Plaintiff posits that this evidence about the possible future effects (i.e. early menopause and related symptoms) of the claimed injury (i.e. post-partum abscesses caused by Group A Streptococcus infection leading to a hysterectomy and salpingo-oophorectomy)[3] does not have to be stated with the same medical certainty required for causation. (*Id.* (citing *Villari v. Termix Inter'l Inc.*, 692 F.Supp. 568 (E.D. Pa. 1988); Docket No. 6 at 4-5). Further, Plaintiff argues that the case law cited by Defendant Hospital is inapposite because it relates to the

---

[2] *Vogelsberger* found that sufficient facts were presented to permit a jury to conclude that the defendant hospital's deviation from the standard of care increased the risk of harm, i.e. from respiratory depression to plaintiff Vogelsberger, thereby providing a basis upon which the question of <u>causation</u> was properly submitted to the jury. *Vogelsberger*, 903 A.2d 564-65. In reaching this conclusion, the court performed a two-step test: (1) "whether the plaintiff's expert could testify to a reasonable degree of medical certainty that the acts or omission complained of could cause the type of harm that the [plaintiff] suffered;" and (2) "whether the acts complained of caused the actual harm suffered" by the plaintiff. *Id.* at 563 (citation omitted). However, the *Vogelsberger* court relaxed that standard in that case because it was impossible to state with a reasonable degree of medical certainty that the negligence caused the injury. *Id.* Instead, if the expert could opine to a reasonable degree of medical certainty that the acts or omission *could have* caused the harm, then it becomes a jury question with regard to whether they believe it caused the harm. *Id.*(emphasis in original).

[3] Plaintiff's discharge diagnosis included post-partum infection and sepsis, significant blood loss, hypovolemia and hypovolemic shock, post-partum abscess, salpingitis, inflamed appendix resulting in an appendectomy, infection of her uterus, fallopian tubes and ovaries resulting in a total hysterectomy. (Docket No. 6 at 5, 8; *see generally* Deposition of Merrideth Leggat, dated 3/2/2007).

causation standard applicable to a claim of negligence and the resultant increased risk of harm of an injury, where that injury underlies a plaintiff's claim. (Docket No. 95 at 3). Specifically, Defendant Hospital's case citations support Plaintiff's allegations that the Hospital's negligence increased her risk of having a total hysterectomy. (*Id.*). They do not apply to the challenged testimony of Dr. Leggat that Plaintiff's hysterectomy increased the risk of future harms. (*Id.*). Thus, Plaintiff argues that Dr. Leggat's testimony concerning the effects of her hysterectomy should be permitted at trial. (*Id.*). The Court agrees for the following reasons.

In Pennsylvania, in order to prove medical malpractice, a plaintiff must establish "a duty owed by the physician to the patient, a breach of that duty by the physician, that the breach was the proximate cause of the harm suffered, and the damages suffered were a direct result of harm." *Griffin v. Univ. of Pittsburgh Med. Center-Braddock Hosp.*, 950 A.2d 996, 999-1000 (Pa. Super. Ct. 2008)(quoting *Quinby v. Plumsteadville Family Practice, Inc.*, 907 A.2d 1061, 1070-71 (Pa. 2006)). A plaintiff must satisfy her burden of proving medical negligence by showing that she suffered an injury that would not have occurred in the absence of the defendant's negligence. *Quinby*, 907 A.2d at 1071.

In addition to the damages Plaintiff seeks for having to undergo a total abdominal hysterectomy and bi-lateral salpingo-oophorectomy, Plaintiff claims damages related to injuries she may suffer as a result of her hysterectomy. (Docket No. 6 at 10, 14, 18). The challenged testimony of Dr. Leggat describes Plaintiff's risk for developing future injuries which might flow from the initial injury, i.e. the hysterectomy, allegedly caused by Defendants' negligence. Her treatment records document both a history and findings

consistent with this testimony. (*See* Docket No. 29-18 at 2;[4] Docket No. 29-19 at 3;[5] Docket No. 29-20 at 2;[6] Docket No. 29-5 at 14[7]).

In this Court's estimation, this testimony is correctly labeled by Plaintiff as "prognosis testimony," which Pennsylvania law permits expert witnesses to offer at trial. *See Villari*, 692 F.Supp. at 573 ("experts should not be barred from testifying about the medical risks plaintiffs face as a result" of alleged injuries caused by a defendant's alleged medical negligence); *see also Carter v. United States Steel Corp.*, 568 A.2d 646, 664 (Pa. Super. Ct. 1990)("a plaintiff in a personal injury suit may introduce expert testimony to support a claim that [she] may suffer certain future harm as a result of a past injury"). As both a treater and medical expert on damages,[8] Dr. Leggat may offer her prognosis of Plaintiff's future harms given that she is already injured. *See Boyle v. Pennsylvania R.R.*, 170 A.2d 865, 867 (Pa. 1961). In fact, Plaintiff has testified that she is already experiencing certain symptoms related to premature menopause. For example, she reported to her doctor in January and February 2007 that she was suffering from various symptoms, i.e. hot flashes and mood swings, both

---

[4] On April 9, 2005, Dr. Merrideth Leggat performed a bone mineral density exam and reported that Plaintiff had a low bone mass, otherwise known as osteopenia. (Docket No. 39-18 at 2).

[5] On January 2, 2007, Plaintiff reported that she was suffering from hot flashes and mood swings. (Docket No. 29-19 at 3).

[6] On February 6, 2007, Plaintiff again reported that she was experiencing mood swings and hot flashes. (Docket No. 29-20 at 2).

[7] On February 26, 2007, Plaintiff reported to Dr. Merrideth Leggat that she was suffering from post-menopausal symptoms including hot flashes several times per day and mood swings. (Docket No. 29-5 at 14). Dr. Leggat also noted a history of osteopenia on this date. (*Id.*).

[8] Plaintiff has proffered that Dr. Leggat will testify at trial consistently with her March 2, 2007 deposition, in which she testified regarding Plaintiff's development of the postpartum infection, the subsequent hysterectomy, her treatment and health after the surgery, as well as the consequences Plaintiff will endure in the future as a result of her hysterectomy. (Docket No. 38 at 3).

of which are linked to menopause. (Deposition Transcript of Plaintiff Vita Monestersky 11/5/2008, at p. 33, l. 7-18; p. 35, l. 3-16; p. 36, l. 13-18; p.37, l.12-15; p. 39, l. 16-23).

When asserting prognosis, a medical expert is not expected to express his or her opinion with the same medical certainty required to address causation issues. *Boyle*, 170 A.2d at 867; *see also Griffin*, 950 A.2d at 1000. Despite same, Dr. Leggat testified that all of her opinions are to a reasonable degree of medical certainty. (*See* Docket No. 98-2 at 4).[9]

Therefore, the Court finds that Dr. Leggat's testimony regarding Plaintiff's increased risk of developing future injuries as a result of her total hysterectomy is admissible at trial. Accordingly, Defendant Hospital's Motion in Limine to Preclude Plaintiff from Introducing any Evidence concerning Increased Risk of Harm [66] is DENIED.

*s/Nora Barry Fischer*
Nora Barry Fischer
United States District Judge

CC/ECF:   All counsel of record.
Date:     October 28, 2009.

---

[9] The Court further notes that Plaintiff's expert, Dr. Michael Ross, states in his expert report that, to a reasonable degree of medical certainty, Plaintiff will experience a number of long term consequences as a result of the total hysterectomy. (Docket No. 29-2 at 3).